UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SCOTT B.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. 2:26-cv-01845-BAT

**ORDER REVERSING AND REMANDING FOR FURTHER PROCEEDINGS**

Plaintiff seeks review of the denial of his application for Supplemental Security Income and Disability Insurance Benefits. He contends the ALJ misevaluated the medical opinion evidence and failed to account for all of his limitations in determining RFC. Dkt. 12 at 1. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is currently 56 years old, has a high school education, and has past relevant work as a cashier. Tr. 29. He applied for benefits on January 18, 2023, alleging disability as of March 15, 2021. Tr. 17. His application was denied initially and upon reconsideration. *Id.* Plaintiff failed to appear at his hearing in October 2025 and did not respond to a notice to show cause for failure to appear. *Id.* Accordingly, ALJ Michael Hellman found Plaintiff constructively waived

his right to appear and testify at a hearing. *Id.* On November 13, 2025, the ALJ issued a decision finding Plaintiff not disabled. Tr. 17-29. As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-3.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

> **Step one:** Plaintiff has not engaged in substantial gainful activity since March 16, 2021.
>
> **Step two:** Plaintiff has the following severe impairments: depressive disorder; generalized anxiety disorder; alcohol use disorder; and stimulant use disorder.
>
> **Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]
>
> **Residual Functional Capacity:** Plaintiff can perform work at all exertional levels; can carry out non-complex (i.e., up to SVP 4) instructions; and can understand and follow employer set goals but not those that he independently sets on a consistent basis.
>
> **Step four:** Plaintiff can perform his past work as a cashier as he actually performed the work and as generally performed in the national economy.
>
> **Step five:** As Plaintiff can perform his past relevant work, he is not disabled.

Tr. 19-22, 29.

## DISCUSSION

The Court will reverse the ALJ's decision only if it is not supported by substantial evidence or if the ALJ applied the wrong legal standard. *Molina v. Astrue,* 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. The Court may neither reweigh evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Where the evidence is

---

[1] 20 C.F.R. § 404.1520

[2] 20 C.F.R. Pt. 404, Subpt. P, App'x 1.

susceptible to more than one rational interpretation, the Court must uphold that of the Commissioner. *Id.*

### A. Step Two

The ALJ found Plaintiff's reports of pain and paresthesia in his hands were nonmedically determinable impairments. Tr. 20. The ALJ stated there were no clinical findings Plaintiff was diagnosed with rheumatoid arthritis or any other condition involving the joints of his hands, and that the diagnosis of "vasoconstrictive disease" did not substantiate a medically determinable impairment. Tr. 20. Plaintiff argues this finding cannot be squared with the record and the ALJ's failure to find a medically determinable hand impairment was harmful error. Dkt. 12 at 15-16.

At step two, Plaintiff carries the burden of establishing he has a medically determinable impairment or combination of impairments and that his impairment or combination of impairments is severe. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987). A medically determinable impairment is one that results from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. Diagnostic techniques include chemical tests such as blood tests, electrophysiological studies, medical imaging, and psychological tests. 20 C.F.R. § 404.1502(c). An ALJ cannot rely on a claimant's statement of symptoms, a diagnosis, or a medical opinion to establish the existence of a medically determinable impairment. 20 C.F.R. § 404.1521.

In July 2021, Plaintiff received a vascular ultrasound of the upper extremities which revealed findings suggestive of vasoconstrictive disease. Tr. 470-72. He followed up on these ultrasound results in January 2022 with a vascular surgeon, who ruled out Raynaud's phenomenon. Tr. 547. In March 2025, he was referred to a neurologist for an evaluation of pain

in both hands. Tr. 994-99. The neurologist, Dr. Armstrong, completed an EMG and nerve conductions studies of the upper extremities and found mild bilateral median compressions across the wrist (carpal tunnel syndrome). Tr. 995. However, Dr. Armstrong noted he would not expect these results to cause persistent symptoms of numbness and tingling or ongoing hand pain. *Id.* The doctor noted cervical root compression was possible, though there was no objective evidence on exam or electrodiagnostic testing of cervical radiculopathy. *Id.* Dr. Armstrong also posited that Plaintiff's pain could be caused by cervical spine degenerative disease, wrist arthritis, or early rheumatoid arthritis. *Id.*

An x-ray later that same month showed some disc degeneration between C5 and C6, which Dr. Armstrong noted could contribute to pressure on the nerve roots leaving his spine going down to his hands. Tr. 1022; *see also* Tr. 1033 (moderate disc narrowing with degenerative change at C6-7, mild disc degenerative changes at C5-6 and throughout the cervical facet joints). Although the ALJ cited these x-ray findings in determining that Plaintiff's degenerative disc disease of the cervical spine was a nonsevere impairment, the ALJ failed to acknowledge Dr. Armstrong's comments connecting the x-ray findings to Plaintiff's hand pain. Tr. 20 (citing Tr. 1022, 1033).

These test results constitute objective medical evidence sufficient to establish a medically determinable impairment. Accordingly, the ALJ erred by finding Plaintiff's hand pain and paresthesia were nonmedically determinable impairments. Errors at step two can be harmless, as the RFC should be the same regardless of whether certain impairments are considered severe. *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). However, by failing to find Plaintiff's hand pain was a medically determinable impairment at all, the ALJ erroneously failed to consider the impairment or symptoms in determining RFC. Such error is harmful as it resulted in

an RFC that did not account for all limitations arising from a severe impairment. *See Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1055 (9th Cir. 2006) (finding an error is harmful when it has some consequence on the ultimate non-disability determination).

**B. Medical Evidence**

The ALJ considers the persuasiveness of medical opinions using five factors (supportability, consistency, relationship with the claimant, specialization, and others), but supportability and consistency are the most important factors. 20 C.F.R. §§ 404.1520c(b)(2), (c). ALJs must explain how they considered supportability and consistency but need not explain how he considered other factors. *Id.* Supportability concerns how a medical source supports their opinion with relevant medical evidence; consistency concerns how a medical opinion is consistent with other evidence from medical and non-medical sources. *Woods v. Kijakazi,* 32 F.4th 785, 791-92 (9th Cir. 2022).

An ALJ cannot reject a doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Id.* at 792. Conclusions alone are insufficient – "an ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998)).

**1. Katherine Gray Landham, LMHC**

Plaintiff's therapist, Ms. Landham, completed a mental impairment questionnaire in April 2025. Tr. 1104-08. Ms. Landham opined Plaintiff was markedly limited in his ability to interact with others and was moderately limited in concentrating, maintaining pace, and managing

oneself in the workplace. Tr. 1105. The ALJ found Ms. Landham's opinion unpersuasive on the grounds it was unsupported and inconsistent with the record. Tr. 27.

The ALJ found Ms. Landham provided little explanation in support of her conclusions and did not provide specific work-related limitations. Tr. 27. The ALJ may reject an opinion where it fails to specify a claimant's functional limits. *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (finding the ALJ could reasonably conclude that descriptions such as "fair" or "limited" were inadequate for determining RFC). Ms. Landham provided a specific rating for nine categories of functioning which roughly correspond to the Paragraph B criteria, using the same language used by the Social Security Administration — mild, moderate, and marked.[3] Tr. 1105. Further, Ms. Landham's opinion, while partially expressed in a check-box form, contains several narrative portions explaining her opinion. *See* Tr. 1104-08. That Ms. Landham did not write the specific bases for each limitation next to that limitation is not, alone, a rational reason to reject her opinion. *Adria H. v. Comm'r of Soc. Sec.,* 2022 WL 73870, at *4 (W.D. Wash. Jan. 7, 2022).

The ALJ also found Ms. Landham's opinion was not supported by her treatment notes noting she did not complete mental status examinations at Plaintiff's appointments and did not indicate Plaintiff had any issues interacting with her despite opining marked limitations in interacting with others. Tr. 27. Plaintiff correctly notes the regulations do not require a provider to administer formal mental status examinations before her opinion may be credited. Dkt. 12 at 10. An ALJ may not reject the report of a mental health practitioner "simply because of the relative imprecision of the psychiatric methodology," which necessarily depends "in part on the

---

[3] *Compare* Tr. 1105 (defining "marked" as "the ability to function independently, appropriately, effectively, and on a sustained basis is seriously limited.") *and* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing 12.00F(2)(d) (defining "marked" as "[y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.").

patient's self-report, as well as on the clinician's observations of the patient." *Buck,* 869 F.3d at 1049. Ms. Landham's treatment notes include Plaintiff's symptoms, her clinical impressions, and therapeutic interventions used, which support for her opinion. *See, e.g.*, Tr. 358-444.

Further, the fact a claimant manages to cooperate with a treatment provider does not contradict a provider's opinions about his ability to interact with others in the workplace, where relationships are different than in a less demanding or more supportive treatment environment. *Tina R. v. Comm'r of Soc. Sec.,* 2019 WL 1417301, at *5 (W.D. Wash. Mar. 29, 2019); *see also* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(C)(6)(b) ("Your ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate your ability to complete tasks in the context of regular employment").

As to consistency, the ALJ found Ms. Landham's opinion inconsistent with the mental status examinations in the record, which showed no abnormalities other than mood issues. Tr. 27 (citing Tr. 447-48, 453, 457, 461, 495, 515, 537, 623, 632, 859). Mental status examinations reflecting abnormalities only in mood are consistent with Ms. Landham's opinion, as Plaintiff's limitations flow from his depressive disorder and generalized anxiety disorder. *See Ghanim v. Colvin,* 763 F.3d 1154, 1164 (9th Cir. 2014) (observations of cognitive functioning did not contradict claimant's reported symptoms of depression and social anxiety); *Morris v. Berryhill*, 358 F. Supp. 3d 875, 882-83 (D. Ariz. 2019).

At step three, the ALJ found the Paragraph C criteria was not met because there was no evidence Plaintiff had mental treatment in a highly structured setting, or he had minimal capacity to adapt to changes in his environment during the relevant period. Tr. 22. Plaintiff argues the ALJ mischaracterized the record by ignoring Ms. Landham's opinion that he had only marginal

adjustment. Dkt. 12 at 11; Tr. 1106 (defining marginal adjustment as a minimal capacity to adapt to changes in his environment or to demands that are not already part of daily life). Statements about whether a claimant's impairment meets or medically equals any listing in the Listing of Impairments are considered neither valuable nor persuasive. 20 C.F.R. § 404.1520b(c)(3)(iv). Moreover, Ms. Landham does not explain this part of her opinion and her treatment notes do not contain evidence supporting this finding. Accordingly, the ALJ did not mischaracterize the record by stating that there was no evidence that Plaintiff had minimal capacity to adapt to changes in his environment.

In sum, the ALJ's supportability and consistency findings are not supported by substantial evidence, and the ALJ thus erred by rejecting Ms. Landham's opinion.

**2. Elisabeth Gehringer, DO**

Plaintiff's primary care physician, Dr. Gehringer, completed a residual functional capacity questionnaire in December 2024 and opined that due to bilateral hand pain and paresthesias, Plaintiff could lift up to twenty pounds occasionally, could not use his hands for fine or gross manipulation for more than ten percent of the day, and could reach for ninety percent[4] of the day. Tr. 729. Dr. Gehringer also opined Plaintiff would likely be absent from work two days per month. *Id.* The ALJ deemed the opinion unpersuasive finding it not well supported and inconsistent with the medical evidence.

---

[4] The Court notes that, due to the opinion's handwritten nature, it is unclear precisely what percentage Dr. Gehringer listed for Plaintiff's reaching ability. *See* Tr. 729. In his decision, the ALJ interpreted her opinion as "either seventy percent or ninety percent[.]" Tr. 26. Plaintiff's opening brief indicates that he believes this number to be fifty percent. Dkt. 12 at 16. To the extent the ALJ felt that Dr. Gehringer's opinion was ambiguous, the ALJ should have contacted Dr. Gehringer to clarify any ambiguity. *See Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001) (finding that ambiguous evidence "triggers the ALJ's duty to conduct an appropriate inquiry.") (internal quotation marks omitted).

The ALJ found Dr. Gehringer's opinion was not well-supported because it was completed on a pre-printed form, on which the doctor provided little explanation for her conclusions other than to cite Plaintiff's subjective reports of hand pain. Tr. 26. An ALJ may permissibly reject check-off reports that do not contain an explanation of the bases of the doctor's conclusions. *Molina,* 674 F.3d at 1111. However, the ALJ may not reject such forms where they are accompanied by supporting treatment notes. *Garrison,* 759 F.3d at 1014 n.17; *see also Trevizo v. Berryhill,* 871 F.3d 664, 677 n.4 (9th Cir. 2017) ("there is no authority that a "check-the-box" form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments."). Although the doctor's opinion itself contains little narrative explanation, it is accompanied by several years of treatment notes, and Dr. Gehringer stated her opinion was not based only on Plaintiff's reports of pain, but also on physical examination, direct observation and treatment, historical medical records, and imaging studies. Tr. 730.

The ALJ also found Dr. Gehringer's opinion was not supported by her treatment notes, which showed no abnormalities in Plaintiff's hands other than occasional edema, no range of motion deficits, and indication Plaintiff was in acute distress at visits. Tr. 26. The ALJ appears to seek objective corroboration of Plaintiff's pain through Dr. Gehringer's treatment notes. This is improper. The Ninth Circuit has recognized that pain "is a completely subjective phenomenon" and "cannot be objectively verified or measured." *Fair v. Bowen,* 885 F.2d 597, 601 (9th Cir. 1989). Further, Dr. Gehringer's opinion was based on Plaintiff's pain and paresthesia in his hands, which is not necessarily inconsistent with normal range of motion and motor strength.

District courts in this Circuit, including this Court, have questioned the applicability of notes of "no acute distress" to chronic conditions. *See, e.g., Troy A. H. v. Comm'r of Soc. Sec.,*

2022 WL 336846, at *5 (D. Or. Feb. 4, 2022); *Richard F. v. Comm'r of Soc. Sec.,* 2019 WL 6713375, at *7 (W.D. Wash. Dec. 10, 2019). Notably, the Ninth Circuit has also rejected ALJ findings that rely upon a lack of acute distress as a basis to discount allegations of chronic pain. *See Reinertson v. Barnhart,* 127 F. App'x 285, 290 n.2 (9th Cir. 2005) (finding one who suffers from chronic pain is not necessarily in "acute distress"). And while acute distress was not noted, Dr. Gehringer did report Plaintiff appeared tired and uncomfortable at two separate visits. *See* Tr. 474, 482.

Regarding consistency, the ALJ found Dr. Gehringer's opinion inconsistent with the medical evidence because examinations in the record showed no ongoing abnormalities in his hands, no range of motion or motor strength deficits, and no acute distress. Tr. 26. Contrary to the ALJ's statement, examinations in the record did show ongoing abnormalities with his hands. See Tr. 515 (small varicosities in both hands); 547 (hands have swollen joints and erythema with blanching over knuckles); 994-95 (reflexes are hypoactive at both upper extremities, range of motion of the wrists perhaps mildly decreased); 1000 (on sensory exam there is diminished pinprick sensation in all the fingers of both hands). Plaintiff also regularly reported and discussed his hand pain with his therapist and other providers. *See* Tr. 405, 407, 409, 421, 433, 460, 545, 929, 994. Further, Dr. Gehringer's opinion was based on Plaintiff's pain and paresthesia in his hands, which is not necessarily inconsistent with normal range of motion and motor strength in the record. Finally, as noted above, notations indicating Plaintiff was not in "acute distress" are not inconsistent with Dr. Gehringer's opinion and are of limited relevance in cases involving chronic pain.

In sum, the ALJ's supportability and consistency findings are not supported by substantial evidence, and the ALJ erred by rejecting Dr. Gehringer's opinion.

**C. Concentration, Persistence, and Pace Limitations**

At step three, the ALJ found Plaintiff had moderate limitations in the broad functional area of concentration, persistence, and maintaining pace. Tr. 21. Plaintiff argues the ALJ's RFC assessment was erroneous because it did not include limitations addressing this functional area. Dkt. 12 at 12. The RFC limited Plaintiff to carrying out only non-complex (up to SVP 4) instructions and understanding and following employer set goals but not those that he independently set on a consistent basis. Tr. 22.

An RFC assessment adequately captures restrictions in broad functional areas if it is consistent with the concrete limitations in the medical opinions. *Stubbs-Danielson v. Astrue,* 539 F.3d 1169, 1174 (9th Cir. 2008). State agency consultants Dr. W and Dr. E opined Plaintiff "retain[ed] the capacity to maintain CP&P for up to 2-hours continuously, maintain adequate attendance, and complete a normal workday/workweek within normal tolerances of a competitive workplace." Tr. 64, 72-73. Plaintiff contends that, having found these opinions persuasive, the ALJ was required to incorporate this limitation or explain its omission. Dkt. 12 at 12-13. But a normal workday is structured to provide a break every two hours, and therefore this part of the state agency opinions does not describe a vocational limitation. SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996) (describing an eight-hour workday as having "a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals."). The ALJ's RFC does not conflict with the opinions and thus the ALJ did not err in failing to include this limitation. *Tanner R. v. Comm'r of Soc. Sec.,* 2023 WL 1098344, at *4 (W.D. Wash. Jan. 30, 2023).

As in *Stubbs-Danielson,* the ALJ's RFC determination is consistent with the restrictions identified in the medical opinions he found persuasive and thus adequately captures restrictions related to concentration, persistence, and pace. 539 F.3d at 1174.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED,** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ shall reassess the opinions of Dr. Gehringer and Ms. Landham, reevaluate Plaintiff's impairments at step two, develop the record and reassess Plaintiff's RFC as needed, and proceed to the remaining steps of the disability evaluation process as appropriate.

DATED this 2nd day of November, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge